Marcello v. Harris, et al.                  07-CV-055-SM  11/2/07
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF RHODE ISLAND


James C. Marcello
and Olivia A. Marcello,
      Plaintiffs

      v.                            Rhode Island Civil No. 07-cv-55
                                    Opinion No. 2007 DNH 154
Constable Alfred Harris, et al.,
      Defendants


                          O R D E R


      Pro se plaintiffs, James and Olivia Marcello, are no

strangers to federal litigation.  A brief search of Westlaw's

First Circuit database reveals well over 35 court decisions in

which one or both have been plaintiffs.  Their reputation in the

federal forum is poor and their litigation conduct has been

characterized as "abusive and obstructive."  Marcello v. DeSano,

No. 05-04-ML, 2006 WL 909930 (D.R.I. April 10, 2006).  They have

been found to have "manifested a disregard for orders of the

court," id., 2006 WL 1582404 at *9 (D.R.I. March 23, 2006), and,

on more than one occasion, plaintiffs have acted "in flagrant

derogation of a direct order of the Court," id., 2006 WL 561506

at *1 (D.R.I. Jan. 20, 2006).  Their filings in prior cases have

been described as "frivolous," "baseless," and "incoherent."  Id.

In one instance, a federal district judge found it necessary to enjoin plaintiffs from filing any additional motions until the court had the opportunity to rule on plaintiffs' numerous motions that were already pending.  Id., slip op. at 1-2 (D.R.I. Dec. 7, 2005) ("taking into account the numerous baseless filings made by plaintiffs in this case, it appears that plaintiffs have abused their right of access to the Court.  For that reason, this Court hereby orders plaintiffs James and Olivia Marcello to refrain from filing any additional motions until this Court has disposed of all pending motions.").  Perhaps not surprisingly, plaintiffs violated that court order as well.  See Id., 2006 WL 2006 WL 561506, at *1 (D.R.I. Jan. 20, 2006) ("The filing of this most recent motion is not only in direct contravention of this Court's December 7, 2005 order, it is yet another in a long series of baseless, incoherent pleadings filed by plaintiffs.").

Pleadings filed in this case demonstrate that plaintiffs are behaving in a manner consistent with a well-established pattern.

## Background

This litigation arises out of plaintiff James Marcello's failed efforts to challenge his father's will and the disposition of his father's estate.  On March 6, 2002, Nicholas F. Marcello

2

(a/k/a Rudolph N. Marcello) executed a new will, naming his brother, defendant Arthur T. Marcello, as Executor. That new will apparently provided James with a substantially smaller portion of Mr. Marcello's estate than James had expected. Specifically, it divided Mr. Marcello's estate among ten living relatives and devised to James, Mr. Marcello's only child, a fifteen percent (15%) share. On September 28, 2002, approximately six and one-half months after executing the new will, Mr. Marcello died.

Subsequently, the Executor (James's uncle) presented the will to the Barrington (Rhode Island) Probate Court. James contested the will, asserting that his father was not mentally competent when he executed it. He also offered a prior "natural will." The probate court apparently rejected James's position and admitted Mr. Marcello's will to probate on April 21, 2003. James did not appeal that decision and it became final upon the expiration of the period allowed for filing an appeal. See Marcello v. Neves, 912 A.2d 420, 420 (R.I. 2006). In December of 2003, the Executor sought, and was granted, an injunction ordering James and his wife, Olivia, to vacate the property, refrain from filing any documents encumbering title to that property, and refrain from interfering with the Executor's

3

duties.  Id.  James and Olivia, however, refused to move.
Nevertheless, in February of 2004, in accordance with the power
of sale clause in Mr. Marcello's will, the Executor sold Mr.
Marcello's home (through a real estate agent, defendant David
Coleman) and disbursed the assets of the estate in accordance
with the will.

Plaintiffs, however, continued to deny the validity of the
will, as well as the authority of the Executor to sell Mr.
Marcello's former home, and refused to leave.  That, in turn, led
to James's eventual arrest and incarceration (during which time
his competency was questioned).  Then, in July of 2004, James
filed suit in state court against the purchasers of his deceased
father's home (defendants Nuno C. Neves and Natalia Paiva-Neves),
requesting the court to declare him to be the rightful owner of
the property, issue a "writ of possession," and award him
compensatory damages for injuries allegedly inflicted by the
purchasers.  In due course, the trial court granted the
purchasers' motion for summary judgment and the Rhode Island
Supreme Court affirmed that decision on appeal.  Marcello v.
Neves, supra.  At that point, the following issues had been fully
and finally resolved: (1) Mr. Marcello died testate and the will
he executed in March of 2002 was valid (i.e., Mr. Marcello was

4

competent when he executed it); (2) the Executor was, among other things, vested with authority to sell Mr. Marcello's former home; (3) the price at which the home was sold was not, as James had claimed, "grossly inadequate"; (4) Mr. and Mrs. Neves acquired clear title to that property and were its rightful owners; and (5) neither James nor Olivia Marcello had any legal claim to that property.

In 2005, apparently dissatisfied with the orders issued by the state courts, plaintiffs, James and his wife Olivia, turned to the federal courts. They filed suit in the United States District Court for the District of Rhode Island against six defendants (all of whom are also named in this action): John DeSano, Bernard P. Healy, John Lacross, Albert Mastriano, Arthur T. Marcello, and the State of Rhode Island. Marcello v. DeSano, R.I. Civ. No. 05-cv-004-ML ("Marcello I"). In their amended complaint, plaintiffs alleged that Mr. Marcello was insane, incompetent, and delusional when his brother, Arthur Marcello, and others conspired to force him to execute the revised will, thereby depriving James of his rightful share of the estate. Plaintiffs also alleged that the defendants conspired to commit various crimes (such as misuse of legal process), orchestrated James's allegedly unconstitutional arrest, and aided the

5

unconstitutional conversion of Mr. Marcello's estate. By orders dated September 9, 2005, and April 10, 2006, the court dismissed all claims against all defendants. See Marcello I, 2006 WL 909930 (D.R.I. April 10, 2006).

Undaunted by their lack of success, in February of 2007, plaintiffs filed this lawsuit in the United States District Court for the District of Rhode Island. In their complaint, plaintiffs raise virtually identical claims to those advanced in Marcello I, but have significantly expanded the number of alleged co-conspirators from the original 6 to 28. Included among the now 28 defendants are the State of Rhode Island, several state court judges, a probate judge, the clerk of the Barrington Probate Court, three law firms, several lawyers, the local police chief, a constable, plaintiff's uncle and two cousins, the real estate agent through whom Mr. Marcello's home was sold, and a mortgage lending company and its owner. Among other things, plaintiffs allege that defendants engaged in a RICO enterprise and conspired to commit numerous crimes, including fraud, embezzlement, forgery, extortion, and kidnaping.

For reasons discussed below, the court need not describe in great detail the multiple causes of action asserted in

6

plaintiffs' complaint. It is sufficient to note that a review of plaintiffs' allegations regarding the expansive conspiracy and RICO enterprise outlined in the complaint suggests that their claims are entirely fanciful. It is, however, important to highlight one critical aspect of plaintiffs' current lawsuit: it arises out of the same core of operative facts that gave rise to Marcello I, plaintiffs' prior (unsuccessful) federal suit. Plaintiffs have merely expanded the cast of characters/defendants and substantially augmented the list of co-conspirators who allegedly aligned themselves against plaintiffs.

Here, as in Marcello I, plaintiffs allege that the defendants engaged in a far-reaching conspiracy designed to fraudulently induce Mr. Marcello to execute the new will, thereby illegally divesting James of his rightful inheritance, and wrongfully evicting him and his wife from his deceased father's home through the use of numerous forged, counterfeited, and/or fraudulently obtained legal documents and court orders. Compare Amended Complaint in Marcello I (alleging that defendants conspired to "commit crimes against the constitutional rights of the plaintiffs, Mr. James and Olivia Marcello, by depriving them of their 'Life, liberty, & Property' without due process of law.") with Complaint in this case (document no. 1), at pages i

7

through iv (describing the scope and goals of the alleged conspiracy and racketeering enterprise). See also Plaintiffs' Memorandum (document no. 165) in Marcello I (describing, among other things, many of the same claims advanced in this lawsuit, including "a fraudulent scheme to obtain the real property, racketeering activity, ascended from life-time of decedent on 3/6/02 to the present, by concealment phase. Corrupt organization of will attorneys John A DeSano, Bernard P Healy, Chief John LaCross, Arthur T Marcello, & Albert Mastriano, established formal procedure & working relationship with State of RI, draping these private citizens with power of state, to use criminal justice system as a mechanism to commit constitutional crimes against plaintiff & wife, depriving them of "LIFE, LIBERTY, & PROPERTY", without due process of law, fraudulently converting estate to defendants, aware, on 2/6/04.").

Upon the recusal of the federal judges in the District of Rhode Island, the case was assigned to me, sitting by designation. Pending before the court are dispositive motions filed by various defendants. Plaintiffs have filed several motions as well.

**Pertinent Legal Principles**

Because so many of defendants' dispositive motions invoke the doctrines of res judicata and collateral estoppel, it is probably best to discuss those doctrines at the outset. First, the court notes that because defendants claim that plaintiffs' prior federal lawsuit has preclusive effect in this case, federal (rather than state) principles of res judicata and collateral estoppel apply. See, e.g., In re Iannochino, 242 F.3d 36, 41 (1st Cir. 2001) ("Federal res judicata principles govern the res judicata effect of a judgment entered in a prior federal suit."). See also Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 89 (1st Cir. 2007) (same).

I. <u>Res Judicata or Claim Preclusion</u>.

To prevail on an assertion that a claim is barred by the doctrine of res judicata (or claim preclusion), a defendant must demonstrate the presence of three factors: "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits." Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1165 (1st Cir. 1991). A final judgment for res judicata purposes is one that "ends the litigation on the merits and leaves nothing for the court to do

9

but execute the judgment." <u>Acevedo-Villalobos v. Hernandez</u>, 22 F.3d 384, 388 (1st Cir. 1994) (quoting <u>Firestone Tire & Rubber Co. v. Risjord</u>, 449 U.S. 368, 373-74 (1981)).

If a defendant demonstrates an identity of parties in the present and an earlier suit, the earlier suit was resolved by entry of final judgment in favor of the defendant, and the causes of action asserted earlier and those asserted in the present case are "sufficiently related," the doctrine of res judicata operates to bar not only relitigation of claims previously raised, but also any claims that <u>could</u> <u>have</u> <u>been</u> raised in the earlier action. <u>See</u> <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980). Present and past causes of action are sufficiently related to trigger the preclusive effect of res judicata if each arises out of a "set of facts which can be characterized as a single transaction or a series of related transactions." <u>Apparel Art Int'l v. Amertex Enterprises Ltd.</u>, 48 F.3d 576, 583 (1st Cir. 1995). "This boils down to whether the causes of action arise out of a common nucleus of operative facts." <u>Mass. Sch. of Law v. ABA</u>, 142 F.3d 26, 38 (1st Cir. 1998) (citation omitted). "In mounting this inquiry, we routinely ask 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the

10

parties' expectations.'" Id. (quoting <u>Aunyx Corp. v. Canon</u> <u>U.S.A., Inc.</u>, 978 F.2d 3, 6 (1st Cir. 1992)).

II.  <u>Collateral Estoppel or Issue Preclusion</u>.

The doctrine of collateral estoppel, or issue preclusion, is related to res judicata but, nonetheless, distinct. "Under collateral estoppel, once a court has actually decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of that factual or legal issue in a suit on a different cause of action involving a party to the first action." <u>Apparel Art Int'l</u>, 48 F.3d at 583. When the parties in a subsequent civil action are the same as those in a prior one, a party seeking to invoke the doctrine of collateral estoppel bears the burden of establishing four essential elements: (1) the legal or factual issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the issue was resolved by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment. <u>Keystone Shipping Co. v. New England</u> <u>Power Co.</u>, 109 F.3d 46, 51 (1st Cir. 1997).

11

III.  Nonmutual Claim Preclusion.

Under federal law, in certain circumstances, defendants who were not parties to prior federal litigation may invoke the doctrine of nonmutual claim preclusion to bar litigation of a claim against them.  The court of appeals for this circuit has described the doctrine as follows:

> [A] version of claim preclusion is appropriate in these circumstances if the new defendants have a close and significant relationship with the original defendants, such as when the new defendants were named as conspirators in the first proceeding but were not joined in the action.  Another formulation of this idea is that preclusion is appropriate only if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance.

In re El San Juan Hotel Corp., 841 F.2d 6, 10 (1st Cir. 1988) (footnote omitted) (citations and internal punctuation omitted).  Subsequently, the court noted that the "critical" factor that must be present in order for new defendants to properly invoke nonmutual claim preclusion is a "close and significant" relationship between those new defendants and the defendants in the earlier proceeding, such as would be the case when they are alleged to have been co-conspirators or co-perpetrators of joint harms.  Hermes Automation Tech., Inc. v. Hyundai Elec. Indus., 915 F.2d 739, 751 (1st Cir. 1990) ("We found to be 'critical' the

12

fact 'that both actions purported to address the various ways in which the original defendant or the original defendant and the new defendant jointly, caused financial harm to the plaintiff.'") (quoting San Juan Hotel Corp., 841 F.2d at 11 n.9).

## Discussion

I.  Res Judicata and the Marcello I Defendants.

The State of Rhode Island moves to dismiss all claims asserted against it, saying: (1) plaintiffs' claims are untimely; (2) the damages plaintiffs seek are barred by Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989); (3) plaintiffs' complaint fails to state a viable claim upon which relief can be granted; and (4) plaintiffs' claims are barred by res judicata and/or collateral estoppel.  Because the court agrees that plaintiffs' claims against the State are barred by res judicata, it need not address the remaining (likely meritorious) arguments advanced in the State's motion.

All of the claims plaintiffs advance against the State arise out of the same core of operative facts that gave rise to the claims plaintiffs asserted against the State in Marcello I.  And, plaintiffs seek compensation for the same alleged harms – the allegedly unlawful and unconstitutional taking of Mr. Marcello's

13

home, the eviction of plaintiffs from that home, and the eventual sale of that home and many of its contents. To the extent plaintiffs assert that they have raised new claims against the State in this proceeding, such claims plainly could have (and should have) been raised in Marcello I. Consequently, the causes of action plaintiffs advance against the State in this case are barred by the doctrine of res judicata. The State's motion to dismiss (document no. 41) is, therefore, granted.

Likewise, plaintiffs' claims against the other five individuals who were actually parties to Marcello I are barred by res judicata. While most of those defendants have yet to file dispositive motions, John Lacross has done so (in a motion jointly filed with new defendants Lorraine Derois and Judge Marvin Homonoff). Accordingly, as to defendant John Lacross, that motion to dismiss (document no. 30) is granted.

II. Nonmutual Claim Preclusion and Alleged Co-Conspirators.

In their motion to dismiss, defendants Lorraine Derois and Judge Marvin Homonoff correctly point out that, because this case arises out of the same core of operative facts that gave rise to the claims in Marcello I, and because they are alleged to have engaged in the same or similar conspiracies as those identified

14

in Marcello I, plaintiffs could have and should have raised their claims against Derois and Homonoff in Marcello I. The court agrees. Because plaintiffs' complaint in the instant case alleges that Derois and Homonoff have a close and significant relationship with the defendants in Marcello I (by virtue of their status as alleged co-conspirators in the conspiracies and RICO enterprises identified by plaintiffs), plaintiffs' current claims against Derois and Homonoff are barred by the doctrine of nonmutual claim preclusion. See San Juan Hotel Corp., 841 F.2d at 10. Accordingly, the motion to dismiss jointly filed by Derois and Homonoff (and LaCross) (document no. 30) is granted.

David Coleman, proprietor of Coleman Realty, also moves to dismiss plaintiffs' claims, asserting that: (1) plaintiffs' complaint fails to state a claim upon which relief may be granted; (2) plaintiffs' claims are untimely; and (3) plaintiffs' claims are barred by the doctrine of nonmutual claim preclusion. Like virtually all of the defendants in this case, Coleman is alleged to have been a co-conspirator in the various conspiracies described by plaintiffs in Marcello I and augmented in this case – conspiracies aimed at depriving James of his "proper" share of his father's estate and unlawfully dispossessing him of his father's former home. Those claims are, then, barred by the

15

doctrine of nonmutual claim preclusion.  Accordingly, Coleman's motion to dismiss (document no. 119) is granted.

III. <u>Failure to State a Claim</u>.

Defendants Ava Martinelli and Diamond Funding Corporation ("DFC") move to dismiss plaintiffs' claims against them, asserting that, while they are named as defendants in the caption of plaintiffs' complaint, "[a]fter that, they are not mentioned in the complaint again.  There are no factual allegations against them.  There are no facts in the complaint to support any cause of action in the complaint."  Memorandum in support of motion to dismiss (document no. 113) at 1.  Although the time for filing an objection passed several months ago, plaintiffs have not responded, nor have they moved to amend their complaint.

Having searched through plaintiffs' 55 page complaint, the court is unable to find any references to either DFC or Ava Martinelli.  Accordingly, for the reasons set forth by DFC and Ava Martinelli, their motion to dismiss (document no. 113) is granted.

IV.  Summary Judgment.

Defendants Nuno Neves and his wife Natalia Paiva-Neves (the couple who purchased Mr. Marcello's home from his estate), Jeffrey Caffrey (the lawyer who represented them), and the law firm of Resnick & Caffrey move for summary judgment as to all of plaintiffs' claims against them.  Plaintiffs' claims against those defendants all arise out of plaintiffs' mistaken view that the Executor of Mr. Marcello's estate was not authorized to sell the home, Mr. and Mrs. Neves did not acquire clear title to that home, and, even if they did, they purchased the home at a price plaintiffs believe was substantially below its market value.  Critically, however, all of those claims were (or should have been) previously litigated and were fully and finally resolved against the plaintiffs to the extent raised.  See Marcello v. Neves, 912 A.2d at 420-21 (describing the history of the litigation in the probate court and superior court involving plaintiffs' claims relating to Mr. and Mrs. Neves and Mr. Marcello's former home).

As they did with several other defendants, plaintiffs have simply recast their original claims against Mr. and Mrs. Neves (as well as claims that could have, and should have, been previously raised against their lawyer and his firm) in terms of

17

conspiracy and racketeering. That, however, is insufficient to avoid dismissal of those claims on grounds of res judicata and collateral estoppel (as to Mr. and Mrs. Neves) and nonmutual claim preclusion (as to Attorney Caffrey and his law firm). Their motion for summary judgment (document no. 147) is, therefore, granted.

V.    Dismissal of the Remaining Defendants.

While the remaining defendants have yet to file dispositive motions, because plaintiffs' claims are so transparently baseless the court sees no reason for the remaining defendants to incur additional legal fees in connection with this case, nor should they be forced to bear the stress and anxiety associated with being named a defendant in federal litigation. Additionally, judicial resources are limited and can be put to more efficient use than reconsidering factual and legal issues that were fully and finally resolved years ago.

Plaintiffs were previously afforded the opportunity to fully litigate all the claims advanced and issues presented in this case. Questions involving the validity of Mr. Marcello's will, the disposition of his estate, the removal of plaintiffs from Mr. Marcello's former home, and the sale of that home to Nuno and

18

Natalia Neves, were fully and finally resolved long ago, by courts of competent jurisdiction, including the Barrington Probate Court, the Rhode Island Superior Court, the Rhode Island Supreme Court, and the United States District Court for the District of Rhode Island. While plaintiffs plainly disagree with the judicial resolution of their claims, they are not entitled to indefinitely relitigate the same issues.

The court is, of course, aware that "sua sponte dismissals are risky business," Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001), and should be reserved for rare cases in which the allegations set forth in the complaint, viewed in the light most favorable to the plaintiffs, are "patently meritless and beyond all hope of redemption," id. See also Bezanson v. Bayside Enter., Inc., 922 F.2d 895, 904 (1st Cir. 1990) (holding that "a court on notice that it has previously decided an issue may dismiss the action sua sponte, consistent with the res judicata policy of avoiding judicial waste") (citations omitted). This is such a case and affording plaintiffs an opportunity to amend their complaint would amount to little more than an exercise in futility, and a dramatically wasteful exercise at that.

19

As to the remaining defendants who were also defendants in Marcello I (i.e., John DeSano, Bernard Healy, Arthur T. Marcello, and Albert Mastriano), it is plain that the claims plaintiffs assert against them in this case are barred by the doctrines of res judicata and/or collateral estoppel. Plaintiffs' claims against those defendants are, therefore, dismissed.

Finally, the remaining defendants who were not previously named in any of plaintiffs' various suits are entitled to the protections afforded by the doctrine of nonmutual claim preclusion. As noted above, although plaintiffs have recast their original claims as broader conspiracies and RICO enterprises, they are, in reality and for all practical purposes, the identical claims raised in Marcello I, and certainly arise out of the same core of operative facts that gave rise to Marcello I. And, of course, because they are named as co-conspirators with the original defendants in Marcello I, the remaining defendants have the required "close and significant" relationship with the original defendants. Plaintiffs' claims against those remaining defendants are, therefore, dismissed on grounds that they are barred by nonmutual claim preclusion.

## Conclusion

For the foregoing reasons, as well as those set forth in the parties' respective legal memoranda, the following motions are granted:

1.  The motion to dismiss filed by defendants Lorraine Derois, Judge Marvin Homonoff, and John Lacross (document no. 30);

2.  The motion to dismiss filed by the State of Rhode Island (document no. 41);

3.  The motion to dismiss filed by David Strachman and McIntyre, Tate, Lynch & Holt (document no. 108, as replaced by document no. 120);

4.  The motion to dismiss filed by Eva Martinelli, proprietor of Diamond Funding Corporation (document no. 113);

5.  The motion to dismiss filed by David Coleman (document no. 119); and

6.  The motion for summary judgment filed by Nuno Neves and Natalia Paiva-Neves, Jeffrey Caffrey, and Resnick & Caffrey (document no. 147).

The following motions filed by plaintiffs are denied as being without legal or factual merit, frivolous, and/or barred by the final judgments issued in Marcello I or Marcello v. Neves, 912 A.2d 420 (R.I. 2006):

21

1. Motion for default judgment (document no. 47);

2. Motion to disqualify counsel (document no. 48);

3. Motion for the court to determine its own jurisdiction (document no. 78, as replaced by document no. 79);

4. Motion for summary judgment against the State of Rhode Island (document no. 96);

5. Motion for hearing on motion for summary judgment (document no. 98);

6. Motion for decree pro confesso (document no. 109);

7. Motion for decree pro confesso (document no. 125);

8. Motion for summary judgment (document no. 143); and

9. Motion for hearing on motion for summary judgment (document no. 144).

Finally, as noted above, although the remaining defendants have not yet filed dispositive motions, the court concludes that this is one of those rare cases in which it is appropriate to dismiss plaintiffs' claims against those defendants, sua sponte. Defendants and the judicial system itself are entitled to no less.

22

While it is clear that plaintiffs do not, and likely will never accept the various decisions made by the Barrington Probate Court, the Rhode Island Superior Court, the Rhode Island Supreme Court, and the United States District Court for the District of Rhode Island, as correct, still, it is time for plaintiffs to at least recognize that this dispute has been finally resolved.

The Clerk of Court shall enter judgment in accordance with this order and in favor of all defendants and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

November 2, 2007

cc:  James C. Marcello, pro se
     Olivia A. Marcello, pro se
     Betty Barney, pro se
     Michael A. DeSisto, Esq.
     Robert W. Smith, Esq.
     Thomas C. Plunkett, Esq.
     James Moretti, Esq.
     Frederick E. Connelly, Jr., Esq.
     Mark P. Dolan, Esq.
     Mark A. Charleson, Esq.
     Thomas A. Palombo, Esq.